UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

PAMELA BAGLEY,

    Plaintiff,

v.      CASE NO. 3:10-cv-00109-J-JBT

HOME DEPOT U.S.A., INC.,

    Defendant.
_____/

## ORDER

**THIS CAUSE** is before the Court on Defendant Home Depot U.S.A., Inc.'s Amended Motions in Limine to Bar Certain Testimony of John Morse ("Dr. Morse") ("Motion") (Doc. 46), Plaintiff's Memorandum of Law in Opposition thereto (Doc. 61), Defendant Home Depot U.S.A., Inc.'s (Amended) Additional Motions in Limine ("Additional Motion") (Doc. 47), and Plaintiff's Memorandum of Law in Opposition thereto (Doc. 62). For the reasons stated herein, the Motion and the Additional Motion are due to be **GRANTED in part**, **DENIED in part**, and **TAKEN UNDER ADVISEMENT in part**.

### I. Nature of the Action

Plaintiff alleges that she was injured while using a Krause articulating ladder that collapsed. (Doc. 2.) She further alleges that the ladder was defective and unreasonably dangerous, which made it unstable and caused her injuries. (*Id.*) Plaintiff brings two counts: strict liability (Count I) and breach of implied warranty of merchantability (Count II). (*Id.*) Defendant denies liability and asserts a number of

1

affirmative defenses. (Doc. 38.)

**II.     The Motion (Doc. 46)**

The Motion seeks to exclude from trial certain testimony of Plaintiff's expert witness, Dr. Morse, who is an engineer. (Doc. 46.) The Court notes that the Motion was untimely as it was filed on March 23, 2011 while the deadline for filing *Daubert*[1] motions with respect to Dr. Morse was January 31, 2011. (Docs. 27 & 46.) At the April 20, 2011 telephone status conference, Defendant did not provide a sufficient explanation for the untimeliness of the Motion, apart from saying that the Motion goes beyond *Daubert*-type issues. Nevertheless, the Court will rule on the merits of the Motion. However, no other belated motions should be filed in this case absent leave of Court.

**A.     Dr. Morse's Testimony Regarding Defects, Proximate Cause, Failure to Warn, Deficient Warnings, Alternative Design, and Plaintiff's Contact with the Hinge Lock Release Bar Will Be Allowed**

Defendant seeks to bar Dr. Morse from testifying that the subject ladder is defective and unreasonably dangerous, that the alleged design defect was the sole proximate cause of Plaintiff's fall, that Defendant failed to warn Plaintiff of the dangers, that the warnings were deficient, that alternative designs were feasible, and that Plaintiff contacted the hinge lock release bar while climbing the ladder. (Doc. 46.) In support, Defendant argues, *inter alia*, that: (1) Dr. Morse's opinion that the

---

[1] *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

ladder is unreasonably dangerous is unsupported by reliable methodology, (2) Dr. Morse's opinion that the design of the ladder is defective does not have an engineering basis, (3) Dr. Morse failed to employ any reliable engineering methodology for the opinion that Plaintiff's inadvertent contact with the release bar unlocked the hinge locks, and (4) Dr. Morse's opinion is not adequately supported by the Manning video.[2] (*Id.*) Plaintiff responds that Defendant has misapplied the standard set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993). (Doc. 61.) For the reasons that follow, the Court rejects Defendant's arguments. Accordingly, Dr. Morse's testimony on the aforementioned issues is due to be allowed.

### 1.  Standard

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"The burden of laying the proper foundation for the admission of expert

---

[2] The Manning video was created by Mr. Lindley Manning who was retained as an expert by Mr. Little, a plaintiff in a case litigated in the State of Nevada, involving a Krause ladder. (Morse Aff. ¶ 30 (Doc. 61-1).) The video involved "a stuntman standing on a Krause stepladder and repeatedly kicking the release bar and causing the ladder to collapse." (*Id.*)

testimony is on the party offering the expert, and the admissibility must be shown by a preponderance of the evidence." *Allison v. McGhan Med. Corp.*, 184 F.3d 1300, 1306 (11th Cir. 1999). Under Eleventh Circuit law, expert opinion evidence is admissible if:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1338 (11th Cir. 2003). The *Daubert* inquiry "applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999). "[A] trial court *may* consider one or more of the more specific factors that *Daubert* mentioned when doing so will help determine that testimony's reliability," but "the test of reliability is 'flexible,' and *Daubert*'s list of specific factors neither necessarily nor exclusively applies to all experts or in every case." *Id.* The *Kumho* Court recognized that in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience." *Id.* at 150.

The *Daubert* factors include: (1) whether the theory or technique can be, and has been, tested, (2) whether the theory or technique has been subjected to peer review and publication, (3) whether there is a high "known or potential rate of error"

and whether there are "standards controlling the technique's operation," and (4) whether the theory or technique is generally accepted within the relevant scientific community.  *Id.* at 149-50.

Courts must "ensure that speculative, unreliable expert testimony does not reach the jury." *McCorvey v. Baxter Healthcare Corp.*, 298 F.3d 1253, 1256 (11th Cir. 2002).  However, experts are "entitled to state reasonable assumptions." *Maiz v. Virani*, 253 F.3d 641, 667 (11th Cir. 2001).  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but [nevertheless] admissible evidence." *Daubert*, 509 U.S. at 596.

## 2.   Analysis

Applying the three-part admissibility test set forth in *Hudgens*, the Court finds that Dr. Morse's opinions are admissible.  First, based on Dr. Morse's education, training, skills, and experience (*see* Morse Aff. ¶¶ 2-8 (Doc. 61-1); *see also* Doc. 61-2 at 1-2), the Court determines that Dr. Morse is qualified to testify as an expert in this case.  Next, the Court finds that the methodology by which Dr. Morse reached his conclusions is sufficiently reliable pursuant to *Daubert*.  Moreover, Dr. Morse's personal knowledge and experience also satisfy the Court's reliability concerns.

Dr. Morse's forensic investigation report, dated September 1, 2010, and the supplement thereto, dated November 12, 2010, provide that Dr. Morse's opinions are based on:

5

> Examination and testing of incident Krause ladder[;]
> Photographs of incident ladder[;]
> Examination and testing of other Krause ladders and other articulated ladders[;]
> Literature, patents, photographs and catalog information for other articulated ladder designs[;]
> Cost estimate for ClimbTek guard[;]
> Correspondence between CPSC and Krause[;]
> Conversations with Ms. Bagley[;]
> EMS incident sheet[;]
> Deposition of Ed Hansen[;]
> [His] knowledge of and experience with Krause ladders[;]
> Examination and testing of exemplar Krause ladder[;]
> Depositions of Pam Bagley, Gilbert Blomquist, Theodore Klentzin, and Don Little[;]
> Materials from Little case, including deposition of Lindley Manning, testing video, appellate documents, juror documentation of testing[;]
> Knowledge of and materials from other similar Krause stepladder collapse cases, including Richter, Hudson, Miller, Bueling, Smith, Williams, Kerr and Travers.

(Doc. 64-1 at 8-9; Doc. 65-1 at 5.)

Further, Dr. Morse's Affidavit provides that he "carefully examined the Krause ladder on several occasions, with particular attention to the locking bolts, hinge halves and release bars," that he has "previously examined over 30 Krause ladders which have undergone a joint collapse," and that he has also "examined investigation materials from other collapses." (Morse Aff. ¶¶ 18, 21.)

One such collapse case was the *Little* case in Nevada in which Plaintiff, Mr. Little, retained Mr. Lindley Manning as an expert. (*Id.* at ¶ 30.) In that case:

> Mr. Manning made a video of a stuntman standing on a Krause stepladder and repeatedly kicking the release bar and causing the ladder to collapse. The jury in the *Little* case replicated the testing performed by Mr. Manning. The right of the jury to replicate his testing

6

was appealed and was upheld on appeal.

(*Id.*) Dr. Morse has "spoken with Mr. Manning concerning the video testing" and has "also read his deposition from *Little* that examined the video testing in detail." (*Id.* at ¶ 31.)

Defendant argues that Dr. Morse's opinion should be excluded because he improperly relied on the Manning video from the *Little* case. (Doc. 46 at 9-10.) First, the fact that the video was not peer reviewed does not preclude Dr. Morse from relying on it. *See Schmude v. Tricam Indus., Inc.*, 550 F. Supp. 2d 846, 852 (E.D. Wis. 2008). Further, even if Manning or the video stuntman may not be available for cross-examination, Dr. Morse can still use the video to support his opinions. *See* Fed. R. Evid. 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence in order for the opinion or inference to be admitted.").

As stated in Dr. Morse's Affidavit:

> 37. Mr. Little testified that he contacted the release bar with his foot right before the ladder collapsed and I have read his deposition testimony. His incident is substantially similar to that of Ms. Bagley. In fact, the similarities between Mr. Little's and Ms. Bagley's incidents are striking. Both involve a pre-recall Krause ladder, 12-feet in length, model 121482 MultiMatic, set up as a stepladder. The Little ladder was purchased August 11, 1997, approximately two months before the Bagley ladder was manufactured. Both ladders were purchased at Home Depot. Both incidents took place in a garage with a concrete floor. The collapses were both at the joint by the third rung. Both users testified the ladder was locked before they set it up.

(Morse Aff. ¶ 37.)

Defendant takes issue with the fact that the Manning video does not display an inadvertent act. (Doc. 46 at 13.) However, Dr. Morse explained in his Affidavit that the testing in the Manning video was not designed to be inadvertent as "[e]ngineers rarely create inadvertent tests." (Morse Aff. ¶ 32.) He elaborated:

> [P]erforming testing for inadvertent release bar contact on a Krause ladder using naive test subjects would be highly dangerous. Engineers test for phenomena by deliberately determining if they can occur. . . . If it can be done deliberately, then in all probability, it can happen inadvertently. That is one of the principles of Murphy's Law.

(*Id.*) In light of this evidence, the Court concludes that the Manning video is a type of evidence "reasonably relied upon" by Dr. Morse and, therefore, it can be used to support his opinions.

Defendant further argues that the mere possibility of an event does not establish causation and does not eliminate the alternative cause of Plaintiff's fall, namely, that she set up the ladder incorrectly; thus, Dr. Morse should be barred from testifying that the alleged design defect was the sole proximate cause of the fall. (Doc. 46 at 12-13.) Dr. Morse's Affidavit provides:

> [T]here are two possible reasons why Ms. Bagley's ladder collapsed. Either it was set up in an unlocked or nearly unlocked state (less likely) or it was set up correctly and Ms. Bagley accidentally kicked the release bar while using the ladder (more likely than not). Under the latter scenario, the ladder was set up correctly, so better warnings and instructions for set up would have no effect. However, different designs . . . would have prevented the incident. If the former scenario occurred, then the ladder was set up incorrectly. In this case, defects in the Krause ladder warnings and instructions, as well as the human factors aspects of the lock design, would be causes of the collapse. These defects need to be fixed.

8

(Morse Aff. ¶ 46.) He explained that "[n]o physical evidence would be present to differentiate between these two [possible scenarios]." (*Id.* at ¶ 20.) However, "[b]ased on the evidence given by Ms. Bagley, [he opined that] the ladder was locked when it was set up and she accidentally kicked the release bar."[3] (*Id.*) Further, based on the lack of marks on the locking bolt, he concluded that no structural failure occurred "in a fully engaged or substantially engaged position." (*Id.* at ¶ 19.) He added that "the largest category of joint collapses does not involve structural failure of fully engaged locking bolts. Rather, the locking bolts get into a completely unlocked or almost completely unlocked position, and this allows the ladder to collapse." (*Id.* at ¶ 21.)

Dr. Morse's opinion indicates that under either scenario, the incident resulted at least in part from a defect (a design defect or a defect in the warnings).[4] Dr.

---

[3] Defendant specifically asks the Court to bar Dr. Morse's testimony that Plaintiff contacted the hinge lock release bar while climbing the ladder because Plaintiff testified that she did not remember doing so. (Doc. 46 at 20-21.) As stated *infra* n.4, the fact that Plaintiff does not remember kicking the release bar is not determinative. Moreover, in the case on which Defendant relies, the court actually admitted Dr. Morse's opinions. *See Fitzpatrick v. Louisville Ladder Corp.*, 2001 WL 1568389, *4, n.3 (D. Neb. Dec. 6, 2001) ("[A]lthough [Dr. Morse's] opinion is admissible, it could hardly be afforded much weight."). The court in that case stated: "Of course, an expert's causation conclusion should not be excluded because he has failed to rule out every possible alternative cause." *Id.*

[4] Defendant argues that Dr. Morse's claim of causal connection between defective warnings and Plaintiff's fall is irrelevant because Plaintiff testified she was fully conversant with the warnings and followed them by locking all hinge locks. (Doc. 46 at 14; *see also id.* at 19-20.) The Court is unpersuaded by this argument because the jury, as a fact-finder, will determine how the accident occurred and if the jury finds that the ladder was not locked, Plaintiff should not be barred from submitting evidence in support of the alternative scenario. *See* Fed. R. Civ. P. 8(d)(2) (allowing a party to set out alternative claims).
(continued...)

Morse should not be barred from testifying to what, in his opinion, was the more likely cause of the accident. As in *Schmude*, Dr. Morse's "opinion as to how the ladder failed was not subjected to scientific testing or submitted for peer review or publication." 550 F. Supp. 2d at 852. However, Dr. Morse "was able to show one way in which [the accident happened]."[5] *Id.* As in *Schmude*, Defendant will have an opportunity to demonstrate that the accident was not caused by a defect and, then, "[b]ased on its own consideration of the evidence, the jury" may decide which explanation to adopt. *Id.*

In addition, Defendant argues that Dr. Morse's opinion should be excluded because he did not reproduce "a kick-the-bar scenario." (Doc. 46 at 9; Morse Dep. 10:1-10:3, Nov. 29, 2010.) Dr. Morse testified he has not reproduced that scenario

---

[4](...continued)
In addition, the Court does not find any merit in Defendant's argument that Dr. Morse failed to provide prototype warnings. (Doc. 46 at 14-15, 20.) Dr. Morse expressed in his Affidavit and Forensic Investigation report what needs to be improved and how to change the warnings and instructions. (Morse Aff. ¶¶ 46, 48 (Doc. 61-1); Doc. 64-1.)

Finally, any failure to perform research as to such warnings (Doc. 46 at 14-15), should not bar Dr. Morse's testimony regarding his failure to warn theory. *See Pineda v. Ford Motor Co.*, 520 F.3d 237, 248 (3d Cir. 2008) (concluding that the expert "did not have to develop or test alternative warnings to render an opinion that the [subject] service manual did not provide adequate, step-by-step instructions . . . , or that the lack of instructions was a safety issue"). Moreover, in Florida, there is a presumption that if warnings are posted, they would be read. *See Giddens v. Denman Rubber Mfg. Co.*, 440 So.2d 1320, 1322 (Fla. Dist. Ct. App. 1983) ("Where warning is given, the seller may reasonably assume that it will be read and heeded . . . .").

[5] The fact that Plaintiff may not remember the details of the accident does not necessarily preclude a finding that the fall was caused by a defect. *Ortiz v. Lorie*, 921 So.2d 868, 870 (Fla. Dist. Ct. App. 2006) ("That [plaintiff] does not remember exactly how the accident occurred does not defeat his cause of action [for negligence].").

because it has been documented by others, such as Mr. Manning, and he has independently "established the physics of how it has to occur." (Morse Dep. 10:7-10:16.) He stated that reproduction by test is not necessary in every case because sometimes other methods, such as calculation and engineering principles, are sufficient. (*Id.* at 16:12-17:9.)

> Dr. Morse testified that he performed the following test on the incident ladder:
>
> I cycled the hinges, didn't note any abnormality, examined the locking bolts and the hinge halves, and noted no damage to any of the locking bolts or hinge halves. And then I have a test where the ladder is placed in a horizontal position and I measure, basically, the torque on each joint to determine how stiff it is, because Krauses come in a wide variety of joint stiffness. So I did that test as well.
> . . .
> [He concluded] there's no damage to any of the locking bolts. That's perfectly normal with a Krause collapse; is often the case.

(*Id.* at 7:22-8:12.) In addition to examining and testing the incident ladder, he has also examined and tested other Krause ladders and other articulated ladders. (Doc. 64-1 at 8; *see also* Doc. 65-1 at 5; Morse Aff. ¶ 18.). Further, Dr. Morse's Affidavit provides that he has "made a years-long [sic] study of the behavior of Krause hinges, their operation and design and how they can unlock," he has "investigated over 30 incidents involving joint collapses of Krause articulated ladders," and he has "investigated over 225 accidents involving ladders and climbing equipment." (Doc. 61-1.)

In light of this evidence, the Court does not find Dr. Morse's failure to reproduce "a kick-the-bar scenario" determinative, particularly in light of other

11

decisions from this and other districts holding the same under similar circumstances. *See Thompson v. Tricam Indus., Inc.*, 2007 WL 4800354, *1 (M.D. Fla. Nov. 30, 2007) (stating that although the expert "did not do any exemplar testing," his opinion was admissible since he "examined the ladder, applied the ANSI standards, and took measurements of the ladder and statements from Plaintiffs"); *Czarnecki v. Home Depot USA, Inc.*, 2009 WL 1560194, *6 (E.D. Pa. June 3, 2009) (finding the expert's methodology sufficiently reliable where the expert's report was based on his first-hand observation of the subject ladder, review of all of the documents related to the accident, including police and medical reports, pleadings and depositions, photos of the ladder and accident scene, and material related to the recall of other Krause ladders, and his testing of a similar Krause ladder multiple times).

Any lack of reproduction of the kick-the-bar scenario in this case goes to the weight of Dr. Morse's opinions, not to their admissibility. *See Thompson*, 2007 WL 4800354, at *2. Therefore, Dr. Morse's "[p]hysical examination of the artifacts (Krause ladder) . . . combined with available facts concerning the accident and accident reconstruction" while using "engineering principles and methods, including the principles of forensic analysis, failure analysis and accident reconstruction" (Morse Aff. ¶ 17), along with Dr. Morse's knowledge and experience, provide the reliability necessary to meet the second prong of the three-part admissibility test.

Defendant also argues that the alternative designs propounded by Dr. Morse should be barred as irrelevant due to their alleged infeasibility. (Doc. 46 at 18-19.)

Plaintiff responds that Dr. Morse provided prototypes showing the feasibility of the alternative designs by describing the different methods used by other manufacturers. (Doc. 61 at 13.)

Dr. Morse has sufficiently shown for purposes of admissibility the feasibility of the alternative designs used by other manufacturers, most of which he has personally tested. (*See* Morse Aff. ¶¶ 23-25; Doc. 64-1 at 5-6.) Moreover, Dr. Morse did not need to provide drawings of the alternative designs since he pointed to specific designs that have already been manufactured. *Cf. Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1084 (8th Cir. 1999) (finding the expert's opinion unreliable where the expert did not attempt "to construct or even draw the suggested device, much less test its utility" and did not point to any manufacturer incorporating the suggested design).

Finally, the Court finds that Dr. Morse's testimony will assist the trier of fact to determine the issues in this case. "In arguing that [Dr. Morse] is not qualified to render opinions in this case on the issues of defect and causation—and that his theory of defect is not based on engineering methodology—Defendant in effect argues that his proposed testimony would not assist the trier of fact." *Czarnecki*, 2009 WL 1560194, at *7. As in *Czarnecki*, Dr. Morse's report contains, *inter alia*, detailed descriptions of the ladder in question, of the collapse, and of the alleged defects (*see* Doc. 64-1), "all of which would assist the trier of fact in understanding how the ladder was supposed to function and how it failed," *Czarnecki*, 2009 WL

1560194, at *7. Ultimately, the jury may reject some or all of Dr. Morse's testimony. However, Dr. Morse "should be permitted to testify and to have his suppositions tested by cross-examination, rather than to have such testimony barred completely." *Id.*

In sum, Defendant's request to bar Dr. Morse's testimony regarding alleged defects, causation, failure to warn, deficient warnings, alternative design, and Plaintiff's contact with the release bar, is due to be denied. The Court believes that "in a case of this nature [that] involves recreating a relatively simple accident, the court's gatekeeping role is limited by the simple fact that a jury is more than capable of distinguishing between plausible and implausible explanations and weighing the expert's presentation against the other evidence." *Schmude*, 550 F. Supp. 2d at 853.

> **B.    Defendant's Request to Bar Testimony Regarding Other Claims and Lawsuits, References to the Climbtech Ladder, and References to Recall of Certain Krause Multimatic Ladders, Is Taken Under Advisement**

Defendant moves to bar Dr. Morse or any witness or attorney from referring to any other case or claim against Krause, Inc., Krause-Werk, Home Depot, or any other entity regarding the Krause Multimatic as a claim which is same or similar to Plaintiff's case, from referring to the Climbtech guard, and from referring to the recall of certain Krause Multimatic ladders. (Doc. 46 at 15-18, 21-24.) The Court finds it appropriate to take these portions of Defendant's Motion under advisement at this

time. Any evidence or argument regarding these matters must be proffered outside the jury's presence.

With respect to testimony about any other case against Krause, Inc., Krause-Werk, Home Depot, or any other entity regarding the Krause Multimatic, the admissibility of such testimony will depend in part on the purpose for admission and whether these other cases are substantially similar to the present case. *See Lewy v. Remington Arms Co.*, 836 F.2d 1104, 1108-09 (8th Cir. 1988) ("In deciding on the admissibility of evidence concerning similar occurrences the trial court must satisfy itself that a proper foundation exists for the evidence to be received by the court."). Such determinations in this case are better made at trial.

The Court will also defer its ruling on the admissibility of evidence about the Climbtech guard because even assuming such evidence falls under Rule 407 as a subsequent remedial measure, that Rule allows such evidence to be admitted "when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment." Fed. R. Evid. 407. The Court expresses no opinion at this time whether such evidence does fall within Rule 407.

As to evidence about the recall of certain Krause Multimatic ladders, the Court finds it appropriate to issue its ruling at trial in accordance with the evidence presented because, as Plaintiff points out, any references to the recall may become admissible depending on the testimony elicited from Defendant's expert, Mr.

Verhalen.

### C. Testimony Regarding the Conduct of Home Depot Is Inadmissible

Defendant seeks to bar Dr. Morse or Plaintiff's attorney from offering opinions regarding the conduct of Home Depot in selling Krause Multimatic ladders in 1997 when lawsuits were pending against Home Depot and Krause, Inc. for defective Krause Multimatic ladders. (Doc. 46 at 24-25.) Because Plaintiff agrees that such evidence would be irrelevant to the issues and does not intend to elicit such testimony (Doc. 61 at 20), Defendant's Motion is due to be granted with respect to this issue only.

### III. The Additional Motion (Doc. 47)

### A. Reference to Other Lawsuits Leading to Bankruptcy Is Inadmissible

Defendant seeks to prevent Plaintiff from making statements or references at trial to other claims and lawsuits filed against Krause, Inc. and their economic impact on Krause, Inc., as being irrelevant to Plaintiff's claim and unduly prejudicial to Defendant. (Doc. 47.) Plaintiff concedes that it is not relevant that Krause, Inc.'s bankruptcy was occasioned by lawsuits. (Doc. 62.) Therefore, in light of the lack of opposition, this part of the Additional Motion is due to be granted.

### B. Evidence or Statements Regarding Where the Ladder Was Purchased Will Be Allowed

Defendant seeks to bar Plaintiff from introducing evidence or statements that

the ladder was purchased at some location other than the store alleged in Plaintiff's Complaint.[6]  (Doc. 47.)  Defendant asserts that the ladder could not have been purchased at the location pleaded because it was manufactured after Store No. 272 closed.  (*Id.*)  Defendant argues that Plaintiff should not be permitted to introduce evidence or statements that the ladder was purchased at some other location because her pleading combined with her deposition testimony constitutes an admission. (*Id.*) Plaintiff responds that Defendant attempts to create an issue where none exists because the same subject store relocated and the Complaint refers to both sites for the store.  (Doc. 62.)

The Court finds more merit in Plaintiff's position.  First, the case law Defendant cites deals with contradictions in a deposition errata sheet, a situation not present here. *See Reynolds v. Int'l Bus. Machs. Corp.*, 320 F. Supp. 2d 1290, 1300-01 (M.D. Fla. 2004), *aff'd*, 125 Fed. App'x 982 (11th Cir. Dec. 3, 2004).  Further, under the Federal Rules of Civil Procedure, a pleading need only provide notice of the claims. *See, e.g.*, Fed. R. Civ. P. 8(a)(2).

Given that the Regency Square store replaced the Atlantic Boulevard store, that the two locations are in close proximity, that the subject purchase could not have

---

[6] The Complaint alleges in relevant part that:
    7.   Home Depot sold or introduced into the stream of commerce in the regular course of its business, a Krause articulating ladder, at its *store located on Atlantic Boulevard, Jacksonville, Florida (the store has since relocated to Regency Square No. 272, 9520 Regency Square Boulevard North, Jacksonville, Florida 32225).*
(Doc. 2 (emphasis added).)

been made at the Atlantic Boulevard location, and that there was a significant lapse in time between the purchase of the ladder and the subject accident, a jury should be entitled to evaluate all the evidence and judge Plaintiff's credibility regarding where the ladder was purchased. If Plaintiff testifies differently at trial than she did at her deposition, Defendant can impeach her based on her prior inconsistent testimony. *See, e.g.*, *United States v. Hale*, 422 U.S. 171, 176 (1975) ("A basic rule of evidence provides that prior inconsistent statements may be used to impeach the credibility of a witness."). Therefore, Plaintiff will not be prevented from introducing the evidence or statements in question. Accordingly, this part of the Additional Motion is due to be denied.

### C. Testimony that Plaintiff Recalls She Climbed Higher Than the Second Step on the Ladder Will Be Allowed

Defendant seeks to prevent Plaintiff from testifying that she recalls climbing higher than the second step on the ladder. (Doc. 47.) Defendant points to the errata sheet Plaintiff used to change her answers on page 46, lines 6 and 8, of the deposition transcript, and argues that these amendments should be disregarded. (*Id.*) Plaintiff responds that the testimony Defendant seeks to exclude would not be inconsistent with her deposition. (Doc. 62.)

Plaintiff's original deposition testimony on this issue, even without the errata sheet, was equivocal enough that the jury can weigh any inconsistencies and decide whether to discount Plaintiff's testimony in whole or in part. For example, although

18

Plaintiff changed portions of her testimony on the errata sheet to reflect that she was one step higher than initially stated, she also said several times during the deposition that she did not remember where her feet were just before she fell and that she got as high as the second or third rung. (Bagley Dep. 72:13-72:17.) Moreover, the importance of these changes is disputed when compared with the expert testimony. (*See* Morse Dep. 30:19-31:4.)

Thus, this case is distinguishable from *Reynolds*, 320 F. Supp. 2d at 1300-01, and the cases cited therein. Although there may be some inconsistency between Plaintiff's overall original deposition testimony and her errata sheet, taken as a whole the changes do not equate to a contradiction that should be disallowed by the Court rather than weighed by the jury. Therefore, this part of the Additional Motion is due to be denied.

### D. Testimony that Defendant Had an Obligation to Keep Sales Records Will Be Taken Under Advisement

Defendant seeks to bar Plaintiff from arguing that Defendant had an obligation to retain sales records which would dispute Plaintiff's claim that she purchased the subject ladder at Home Depot. (Doc. 47.) Plaintiff contends she should be allowed to make this argument at least to rebut Defendant's argument that Plaintiff cannot produce any records to prove she purchased the subject ladder from Home Depot. (Doc. 62.)

Neither party cites any law on this issue. Moreover, insufficient facts have

19

been presented regarding Defendant's record retention policies or other pertinent circumstances. *See Lewy*, 836 F.2d at 1112. Thus, the Court finds the record and arguments inadequate to make a decision on this point. This part of the Additional Motion will be taken under advisement until trial. Any evidence or argument regarding this issue must be proffered outside the jury's presence.

Accordingly, it is **ORDERED**:

The Motion and the Additional Motion (**Docs. 46 & 47**) are **GRANTED in part**, **DENIED in part**, and **TAKEN UNDER ADVISEMENT in part** as stated in this Order.

**DONE AND ORDERED** at Jacksonville, Florida, on May 18, 2011.

/s/ Joel B. Toomey
JOEL B. TOOMEY
United States Magistrate Judge

Copies to:

Counsel of Record